**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM NO. 1:18-CR-151 |
| | : | |
| V. | : | (JUDGE RAMBO) |
| | : | |
| | : | |
| HAIXI SHENG, | : | |
| Defendant | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
POSITION REGARDING SENTENCING**

COMES NOW, the Defendant herein, Haixi Sheng, through undersigned counsel, and pursuant to Fed. R. Crim. P. 32(i)(3) and 18 U.S.C. §3553(a), to provide Probation and this Honorable Court with relevant information to consider in determining a sentence that is no greater than necessary to achieve the goals of sentencing under §3553(a)(2) and in response to the final Presentence Report (PSR).

As an initial matter, Mr. Sheng submits he pled guilty to the instant offense and stands before this Court accepting of its punishment. In providing the Court with this Memorandum, he in no way minimizes his conduct, as he recognizes that his crime was serious and requires punishment from this Court.

**Defendant History and Characteristics**

As summarized in the PSR, Haixi Sheng is twenty-one year old citizen of China. His parents, Anyuan Zuo and Jiang Sheng, live together in China and are government employees. (PSR 7) Mr. Sheng "said that he grew up in a 'very close' family with no

instances of abuse." (Id.) Mr. Sheng came to the United States on a student visa in 2015 to attend high school in Phoenix, Arizona. After graduating from high school, he relocated to Pennsylvania to attend Penn State University. (Id.) Mr. Sheng currently lives in State College with his girlfriend, Jiayang Han, also a student at Penn State.

Mr. Sheng prepared an extensive statement to present to this Honorable Court in advance of his sentencing, attached as Exhibit 1. He wrote to express his extreme remorse for his actions and to provide the Court an overview of his life. While undersigned counsel will not summarize the entire letter, preferring for it to be taken as written, he believes it is essential to provide context for one of Mr. Sheng's points of view. Mr. Sheng believes that because he was raised primarily by his mother with very little involvement from his father, he did not learn strength of character and other masculine traits that he would have if his father were more present. This perception is consistent with traditional perceptions of Confucianism, by which Mr. Sheng's girlfriend says he was "highly influenced."[1] (Exhibit 2)

In preparation for sentencing, Mr. Sheng collected character letters from various close friends and acquaintances to present this Honorable Court. These letters present

---

1. To provide context to the Court, the following is provided. "Dong [Zhongshu, an influential Chinese philosopher], whose version of Confucianism won imperial backing during the Han dynasty, was also responsible for promoting the official establishment of a formal cosmology based on *yin* and *yang*, which became quite influential in the Chinese tradition . . . For Dong, males are dominant, powerful, and moral, and therefore *yang*. Women, on the other hand, are precisely the opposite – subservient, weak, selfish, and jealous – and best described as *yin*." "Gender in Chinese Philosophy," by Lijuan Shen and Paul D'Ambrosio, *The Internet Encyclopedia of Philosophy*, ISSN 2161-0002, https://www.iep.utm/edu/, accessed September 2019. *See also* Kam Louie, Phd. Theorising Chinese Masculinity: Society and Gender in China, 2002, particularly page 9.

a remarkably clear portrait of the genuinely kindhearted, compassionate, and hard-working but naïve individual Mr. Sheng is.[2]

Zisheng Huang is a fellow Chinese student in the United States, who came over for schooling at the same time as Mr. Sheng and became his roommate. Mr. Huang stated, "He is the most kindhearted people I ever met, he is always courteous and friendly to all the people." (Exhibit 3) Another student, Yiru Shang, stated "We got the chance to study abroad in Phoenix together. I am so glad I have this gentleman near me when I went through the difficult time. He was a good listener, a considerate friend, a caring family and a helpful teacher . . . He is also that kind of person who has a sense of humor and make people around him comfortable and joyful." (Exhibit 4) Mr. Sheng's friend Dang Hu said beautifully, "Kindness is either hung on his face or engraved at the bottom of his heart." (Exhibit 5)

Several of Mr. Sheng's friends describe his generous gifts of time, resources, and talents. Xuanwen Ding, a close friend of Mr. Sheng, described how he witnessed Mr. Sheng's generosity:

> Haixi Sheng was very good at cooking. He often invited his classmates to his house for parties, Every time he prepared a lot of food and cooked a lot of delicious meals, and I admired Haixi very much because it was a very tiring job and took a lot of time to cook for us, but he never had any complaints, which could show that he was a very enthusiastic and persevering person. He would do everything he likes very seriously and do it well, which was not everyone could.

---

[2] The majority of the letters were written by individuals for whom English is not their first language. As the letters remain unedited, excerpts from them reflect the original grammar and language of their authors.

(Exhibit 6.) A neighbor and friend of Mr. Sheng's, Siwei Zhu, mentions Mr. Sheng's dinner parties as well his willingness to not only lend her cooking equipment, but bring it over to her house himself. (Exhibit 7) Ms. Huang wrote, "He loves to help others, he always brought food to the homeless and donated for the public welfare organization." (Exhibit 3) Perhaps the most touching example of Mr. Sheng's giving spirit is included in a letter written by Chen Luo, Mr. Sheng's best friend since middle school:

> Haixi can play three different music instruments . . . he always went to music store to play music for the old people and young kids. That is totally no payment, I ever asked Haixi why he did this in his spare time rather than just play video games at home. He told me that he wants to do something meaningful. That is reason that I respect him very much.

Exhibit 8.

Although these letters primarily focus on the positive aspects of Mr. Sheng's personality and character, Mr. Luo also offers a genuine perspective on what he considers Mr. Sheng's greatest weakness:

> Haixi is not perfect but also has weakness. He is kind of naïve person, he always willing to trust anyone. This makes himself sometimes fall into a very hard position, but he still willing to trust anybody and believe anyone has the good heart like he do.

Id. This perspective aligns with Mr. Sheng's reflections on the strengths and weaknesses of his own character.

Professor Hannah Lair from Penn State Harrisburg wrote a touching letter on Mr. Sheng's behalf which neatly summarizes all of the themes found in the other character letters. She notes that "he was engaged, respectful, and always seeking to follow instructions. Indeed, he is one of those students of whom I would have least expected a

legal transgression." (Exhibit 9) Even though moving to America for his education was difficult and he experienced struggles, "he also showed kindness toward his classmates. For this reason, on occasion I purposefully assigned him to do group work with students who seemed in need of some extra compassion. Indeed, I cannot think of any instance in which Haixi demonstrated anything but excellent character." Professor Lair closes her letter by stating: "Haixi is, I believe, a good kid who messed up because of this difficulty of cultural adjustment; thus, I hope that he might be offered some leniency."

### Acceptance

Mr. Sheng received a three-level credit for acceptance of responsibility; "The defendant declined to discuss the instant offense and he submitted a written statement after the initial disclosure of the presentence report; however, in the statement, the defendant admits his conduct and expresses remorse for his actions . . . The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty." (PSR, 6-7)

### PSR Objections

As this Honorable Court is aware, Mr. Sheng expressed objections to the PSR. The objection notable to this Honorable Court was Mr. Sheng's objection to the calculation of the fair market value of the turtles in question. The plea agreement Mr. Sheng signed stated the value was $95,000.00; however, the probation officer used $192,500.00 as the value in the draft PSR. As stated in the objections, this number is

"seemingly [based on] an unknown quantification formula and layered in hearsay from individuals associated with a criminal enterprise." (Objections, page 1) In the final PSR, the probation officer amended the calculation to be consistent with what the Government and Defense agreed upon in the plea agreement.

## Traditional §3553 Factors

Section 3553(a) is comprised of two distinct parts: the sentencing mandate contained in the prefatory clause of Section 3553(a), and the factors to be considered in fulfilling that mandate.  The overriding mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.  United States v. Yeaman, 248 F.3d 223, 237 (3d Cir. 2001).

In determining the sentence sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

18 U.S.C. §3553(a). While district courts must in all cases consider the guideline range, the guidelines do not subordinate the other factors in §3553(a). United States v. Booker, 543 U.S. 220, 245-46 (2005). The "sufficient-but-not-greater-than-necessary" requirement is often referred to as the "parsimony provision." United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006). And it is the parsimony provision that serves as "the guidepost for sentencing decisions post-Booker." Id.

The sentencing judge, after considering §3553(a) and §3661 factors (including the Guidelines), has full discretion to sentence anywhere within the statutory range. United States v. Booker, 543 U.S. 220, 304 (2005), (Scalia, J., dissenting). "If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had to be generally followed – its opinion would surely say so." Id. Likewise, if the remedial majority thought the guidelines had to be given more weight than other factors, its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other factors of §3553 would violate the Sixth Amendment. After a district court has accurately calculated the guideline range, it may impose "an appropriate sentence falling anywhere within the range of punishments authorized by Congress," as long as the final sentence is reasonable. United States v. Ausburn, 502 F.3d 313, 327 (3d Cir. 2007).

In keeping with the sentencing mandate under 18 U.S.C. §3553(a), which requires this Court to impose a sentence that is "sufficient, but not greater than

necessary to achieve the goals of sentencing," this Court should take into consideration under §3553(a) Mr. Sheng's lack of criminal history, the specifics of the offense, and the fact that Mr. Sheng will likely be deported due to his criminal activity.

With regard to deterrence of future criminal conduct as well as protection of the public, Mr. Sheng believes a variance is warranted. Mr. Sheng has no appreciable criminal history, including no prior criminal convictions. Criminal offenders among Criminal History Category 1 with zero points, such as Mr. Sheng, have a lower recidivism rate (30.2%) as opposed to offenders with one point (46.9%).

Mr. Sheng's case in particular exemplifies the critical need for our justice system to utilize rehabilitative rather than retributive sentences. As seen in his statement and through the letters written on his behalf, Mr. Sheng has dedicated his young life so far to bettering himself and others through education and dedication to those around him. His naturally generous and accommodating temperament unfortunately meant he was unusually susceptible to acquiesce in confrontational situations such as the one in which the "Kang Brother" put him. (PSR 13) He knew his conduct was wrong, and although he certainly should have refused to participate at all, he took steps to limit his involvement in the broader smuggling ring. (Id.) Specifically, in September 2017 (a month after he initially began shipping the turtles) he refused to expand the scope of his conduct when asked.

Furthermore, as stated in the PSR, "Sheng will likely be removed after he is sentenced in the instant case." (PSR 8) A long prison sentence is not needed to protect the public (as noted in § 3553(a)(2)(C)) because Mr. Sheng will not remain in the United

States after the resolution of this instant matter. He has been offered a conditional offer of acceptance at The University of Queensland in Australia to continue his higher education, attached as Exhibit 16. It is clear from Mr. Sheng's statement he is a highly emotive and sensitive person who, defense respectfully submits to this Honorable Court, has already punished himself more than most individuals do in his scenario. A rehabilitative sentence is critical to allow Mr. Sheng to continue to seek to better himself through continuing his education and contributing to those around him. Given his unusually high levels of remorse, his lack of criminal history, and conduct throughout the course of his criminal behavior, he should be eligible for a two-level departure.

    Mr. Sheng's total offense level, adjusted for acceptance of responsibility, is 13. Given a criminal history categorization of I, his guideline imprisonment range is 12 to 19 months. This puts him in Zone C of the sentencing table. If this Honorable Court were to depart two levels, his range of imprisonment would be 8 to 14 months in Zone B of the sentencing table, rendering him eligible for a sentence of probation that may include home detention. (USSC § 5C1.1(c)(3))

    If this Honorable Court chooses to not depart downward, Mr. Sheng's guideline range remains in Zone C. Pursuant to USSC § 5C1.1(d)(2), Mr. Sheng would be eligible for a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment. Therefore, defense believes Mr. Sheng should receive a sentence of six (6) months' imprisonment followed by home detention in an amount determined by this Honorable Court.

WHEREFORE, in light of the foregoing, Mr. Sheng respectfully requests that this Honorable Court take into consideration the above request prior to imposing his sentence.

Respectfully submitted,

Jonathan W. Crisp, Esquire
Crisp and Associates, LLC
Attorney ID: 83505
4031 N. Front St
Harrisburg, PA 17110
(717) 412-4676

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Memorandum of Law in Support of the Defendant's Position Regarding Sentencing, with the United States District Court for the Middle District of Pennsylvania by using the CM/ECF system. I certify that the following attorney for the opposing party, the United States, will be served a copy of the foregoing by electronic service: Office of the Assistant United States Attorney, James Clancy, Esquire.

JONATHAN W. CRISP